UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| PETER T.R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-04160-SLD-JEH |
| | ) | |
| MARTIN O'MALLEY, Commissioner of | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER</u>

Before the Court are *pro se* Plaintiff Peter T.R.'s Motion for Summary Judgment, ECF No. 41; Defendant Commissioner of Social Security's ("the Commissioner") Response to Plaintiff's Opening Brief, ECF No. 45, requesting that the Court remand via sentence four of 42 U.S.C. § 405(g) and find that Peter is not entitled to relief on certain claims; Magistrate Judge Jonathan E. Hawley's Report and Recommendation ("R&R"), ECF No. 47, recommending that the Court affirm the Appeals Council's December 1, 2022 partially favorable decision, dismiss Peter's remaining claims, and enter a final judgment; and Peter's Objections to Magistrate's R&R, ECF No. 48. For the reasons that follow, Peter's Objections to Magistrate's R&R are SUSTAINED IN PART and OVERRULED IN PART, the R&R is ADOPTED IN PART and REJECTED IN PART, Peter's Motion for Summary Judgment is DENIED, and the Commissioner's decision is AFFIRMED IN PART, REVERSED IN PART, and REMANDED via sentence four of 42 U.S.C. § 405(g).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for his predecessor. The Clerk is directed to update the docket accordingly. References to the Commissioner of Social Security include O'Malley's predecessors—Andrew Marshall Saul and Acting Commissioner Kilolo Kijakazi—where appropriate.

## BACKGROUND[2]

Peter filed this case on August 14, 2019, alleging that the Administrative Law Judge

("ALJ"), Robert H. Schwartz, who issued an unfavorable decision on February 6, 2019, erred in

his decision and generally erred in his handling of Peter's claims.  *See generally* Compl., ECF

No. 1.  Peter primarily argued that the ALJ erred in finding Peter liable for an overpayment from

the Social Security Administration ("SSA") of $5,676.70.  *See id.* at 2–7.  Stemming from this

overpayment finding, Peter asserted claims under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552; the Privacy Act, 5 U.S.C. § 552a; the Administrative Procedure Act, 5 U.S.C.

§ 706(2)(A);[3] the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x; and the right

to procedural due process guaranteed by the Fifth Amendment.  *Id.* at 1–2.  Peter also stated that

his mistreatment was the result of his ethnicity, *see, e.g.*, *id.* at 10 ("Peter . . . has never been

granted a reasonable notice to a supplementary hearing unlike his Caucasian cohorts . . . ."); Feb.

14, 2019 Letter to AC 6, Compl. Ex. 5, ECF No. 1-3 at 40–49 ("I am being singled-out due to

my ethnicity as an American Indian or Alaska Native . . . ."), and sought redress for wrongs

inflicted upon his mother, Margaret J.R., *see* Compl. at 11–12.

The Commissioner filed a Motion for Remand, ECF No. 17, invoking sentence six of 42

U.S.C. § 405(g), and a Partial Motion to Dismiss with Prejudice, ECF No. 19, which also sought

summary judgment in the alternative, *see, e.g.*, Mem. Supp. Partial Mot. Dismiss 1, ECF No. 20.

Peter filed responses to both motions, Resp. Mot. Dismiss, ECF No. 23; Resp. Mot. Remand,

ECF No. 24, to which the Commissioner filed replies, Reply Mot. Dismiss, ECF No. 28; Reply

---

[2] Judge Hawley's R&R provides a detailed summary of the background of this case and the prior decisions of the Social Security Administration.  *See* R&R 1–7.  The administrative record can be found at ECF No. 39.  Citations to the administrative record take the form of: R. __.
[3] Peter states that he "retired the Administrative Procedure Act claim in the interest of judicial economy."  Reply Br. 14, ECF No. 46.  Therefore, the Court does not consider this claim any further.

Mot. Remand, ECF No. 29, and Peter filed sur-replies, Sur-Reply Mot. Dismiss, ECF No. 30; Sur-Reply Mot. Remand, ECF No. 31.  The Court entered an Order remanding the case for further proceedings pursuant to sentence six of section 405(g) and stayed the remainder of the action pending the remand proceedings, noting that "further development may well resolve or moot Peter's remaining claims."  July 13, 2022 Order 6, ECF No. 32.

The Commissioner subsequently filed an updated administrative record, ECF No. 39, and a status report, ECF No. 40, stating that, after further development of the record, the Appeals Council ("AC") issued a final, partially favorable decision.  Status Rep. ¶¶ 3–5.  Peter informed the Commissioner's counsel that he wished to continue the instant case, *id.* ¶ 6, and the Court lifted the stay and set a briefing schedule, *see* July 21, 2023 Text Order (Hawley, M.J.).  Peter's brief, styled as a motion for summary judgment, advanced many of the same arguments as his complaint, with some updates reflecting the subsequent developments in the record.  *See generally* Pl.'s Mem. L. Supp. Mot. Summ. J., ECF No. 41-1; Compl.  The Court found that the Commissioner's Partial Motion to Dismiss with Prejudice was moot and gave the Commissioner leave to include in the Response to Plaintiff's Brief the arguments made in that motion to dismiss.  *See* Aug. 1, 2023 Text Order (Hawley, M.J.).  The Commissioner filed a response brief, Resp. Br., and Peter filed a reply brief, Reply Br., ECF No. 46.  Judge Hawley issued his R&R and Peter timely filed his objections.  *See generally* R&R; Objs.  The R&R construed the Commissioner's request to dismiss certain claims as a request for summary judgment under Federal Rule of Civil Procedure 12(d).  *See* R&R 13–15.

**DISCUSSION**

**I.   Legal Standards**

When a matter dispositive of a party's claim or defense is referred to a magistrate judge,

the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed

findings of fact." Fed. R. Civ. P. 72(b)(1). A party may file written objections to the R&R

within fourteen days of its service. *Id.* 72(b)(2). The district judge will then "determine de novo

any part of the magistrate judge's disposition that has been properly objected to." *Id.* 72(b)(3).

Any unobjected portions will be reviewed for clear error only. *Johnson v. Zema Sys. Corp.*, 170

F.3d 734, 739 (7th Cir. 1999).

The Court must affirm the Commissioner's decision so long as the AC's findings are

supported by substantial evidence and the AC applied the correct legal standards. *Pitts v.*

*Sullivan*, 923 F.2d 561, 564 (7th Cir. 1991); *see also Schloesser v. Berryhill*, 870 F.3d 712, 717

(7th Cir. 2017) (explaining that the court's review is limited "to determining whether the

Appeals Council's decision is supported by substantial evidence on the record as a whole"

(quotation marks omitted)). "Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Schloesser*, 870 F.3d at 717 (quotation

marks omitted). Where the AC has "identified supporting evidence in the record and built a

'logical bridge' from that evidence to its conclusion," a court must affirm. *Id.*

For a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the inquiry is

whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's

claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir.

2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While "detailed factual allegations

are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible

on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277–78 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[M]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action'" are not sufficient to satisfy the plausibility standard.  *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  A court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmov[ant]," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

On a motion to dismiss for failure to state a claim, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* 56(a).  To preclude summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to [the nonmovant's] case, and on which [the nonmovant] will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court must construe the record in the light most favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  "[T]he mere existence of *some* alleged factual dispute is insufficient to defeat a motion for summary

judgment," *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (quotation marks omitted), as "there must be evidence on which the jury could reasonably find for the [nonmovant]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Finally, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quotation marks omitted).

## II.  Analysis

The Court starts by addressing Peter's objections as to whether the substantial evidence standard applies generally to this case and the R&R's conclusions that some of Peter's requested relief was not permitted due to this case's procedural posture.  Peter's objections to the conclusion that the AC's December 1, 2022 partially favorable decision is supported by substantial evidence and the Commissioner's requested relief are addressed.  The Court then turns to Peter's arguments regarding waiver of counsel, due process, and equal protection.  The Court concludes by discussing Peter's asserted causes of action under the FCRA, FOIA, and the Privacy Act; Peter's ability to assert the rights of his mother, Margaret J.R.; and his requests for costs and fees.

### A.  Substantial Evidence Standard and Permissible Relief

Peter objects to the R&R's application of the substantial evidence standard to this case and the declination of his invitation "to step in and decide the facts anew."  Objs. 8 (quoting R&R 11).  42 U.S.C. § 405(g)—entitled "Judicial review"—provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  The R&R stated the familiar limitations upon an Article III court's role in reviewing the Commissioner's decisions: "The Court cannot reweigh evidence, resolve conflicts

in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner[].”  R&R 11 (citing *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir 2004)). *Young* relied upon section 405(g) for the proposition that a court’s task “is limited to determining whether the [Commissioner]’s factual findings are supported by substantial evidence.”  *Young*, 362 F.3d at 1001.[4]

Peter first quotes from *Stern v. Marshall*, 564 U.S. 462, 503 (2011), for the broad proposition that “Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article.” Objs. 8.  His argument appears to be that it violates Article III to allow the SSA to decide the facts in his case or for a federal court to extend deference to that factfinding; in other words, he seems to be arguing that only an Article III court, like this Court, can decide the facts.  But *Stern* addressed whether Congress transgressed Article III by vesting in bankruptcy judges the final adjudicatory authority over a state-law counterclaim, “which, from its nature, [was] the subject of a suit at the common law, or in equity, or admiralty.”  *Stern*, 564 U.S. at 484 (quoting *Murray’s Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)).  Where, as here, a plaintiff’s claim relies on an entitlement created by federal statute, Congress can permit an Article I tribunal to adjudicate the facts.  *Cf. id.* at 488–99 (noting, in finding that the bankruptcy court could not finally adjudicate the counterclaim, that the “claimed right to relief d[id] not flow from a federal statutory scheme” and was “not completely dependent upon adjudication of a claim created by federal law” (quotation marks omitted)); *Freytag v. C.I.R.*, 501 U.S. 868, 911

---

[4] Peter argues *Young* is “actually not favorable caselaw” for the R&R because the ultimate disposition of that case was a reversal and remand.  Objs. 8 (quoting *Young*, 362 F.3d at 1004 n.4).  The Seventh Circuit remanded that case to the SSA because the ALJ failed to “sufficiently connect[] the dots . . . supported by substantial evidence in the record.”  *Young*, 362 F.3d at 1002.  In other words, *Young* applied the same substantial evidence standard applied by the R&R.  That the R&R recommends a different outcome than *Young* does not undermine the binding proposition of law articulated in *Young* regarding the Court’s ability to review the Commissioner’s decisions.

(1991) (Scalia, J. concurring) (noting that "some of the matters now in Article III courts could instead be committed to executive adjudicators" and using the denial of social security benefits as an example).  Congress may limit and indeed has limited the Court's judicial review of the Commissioner's final decision, *see* 42 U.S.C. § 405(g),[5] and *Stern* does not conflict with that limitation.

Peter also invokes the availability of mandamus relief "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Objs. 8 (quoting *Hatcher v. Heckler*, 772 F.2d 427, 432 (8th Cir. 1985)).  Although "the mandamus statute provides jurisdiction in cases challenging the procedures used in administering Social Security benefits but unrelated to the merits," *Obenchain v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-168-JVB-JPK, 2022 WL 10311981, at *7 (N.D. Ind. June 24, 2022) (quoting *Burnett v. Bowen*, 830 F.2d 731, 737 (7th Cir. 1987)), *report and recommendation adopted sub nom. Obenchain v. Kijakazi*, No. 1:20-CV-168-JVB-JPK, 2022 WL 4545937 (N.D. Ind. Sept. 28, 2022), *aff'd*, No. 22-3138, 2023 WL 3690832 (7th Cir. Mar. 31, 2023), the Seventh Circuit has held that "[a] mere mistake of law or an erroneous factual finding is not the type of clear-cut abuse of discretion or usurpation of power necessary for [the Court's] use of the extraordinary remedy of mandamus," *Homewood Pro. Care Ctr., Ltd. v. Heckler*, 764 F.2d 1242, 1251 (7th Cir. 1985) (quotation marks omitted).  Peter's arguments that the Commissioner has erred in his fact-finding are not the sort which would justify this extraordinary remedy.  The substantial evidence standard is the appropriate standard of review, and a writ of mandamus is inappropriate.

---

[5] Peter also argues that "nothing in § 405(g) or the regulations implementing it bars judicial review of [his] claims." Objs. 8 (quoting *Sims v. Apfel*, 530 U.S. 103, 107 (2000)).  *Sims* concerned whether the Social Security Act imposes an issue-exhaustion requirement in addition to its administrative-remedy-exhaustion requirement, not the standard to be applied when judicial review is appropriate.  *See Sims*, 530 U.S. at 107.  *Sims* is inapposite and does not alter the standard of review imposed by section 405(g)'s clear text.

Relatedly, Peter invokes Article III to argue that it was erroneous to find that the Social Security Act does not allow for monetary damages.  *See* Objs. 24–25 ("This Court is an Article III Court in which The Constitution provides that federal courts may be given original jurisdiction over case-or-controversy . . . . [W]here there is a legal right, there is a legal remedy."); R&R 25–26 ("The [Social Security] Act . . . makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits." (alterations in original) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988)).  This Court, as an "inferior" Article III court, *see* U.S. Const. art. 3 § 1, is bound by Supreme Court precedent which has clearly established that money damages are not available under the Social Security Act, *see Schweiker*, 487 U.S. at 424.  "[W]here there is a legal right, there is a legal remedy," Objs. 25, is a broad legal maxim, but it does not and cannot confer power on the Court above and beyond the limits which the Supreme Court has held are applicable.  There was no error on this point.

Peter also seeks injunctive relief, *see, e.g.*, Objs. 1 (requesting the Court "issue a preliminary or permanent injunction"), but again the Court is constrained by section 405(g), which describes the Court's power as being limited to "enter[ing], upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security."  The Constitution protects the United States's right to sovereign immunity, *see* U.S. Const. amend. XI, and the waiver in the Social Security Act, *see* 42 U.S.C. § 405(h), is too narrow to allow for the injunctive relief sought by Peter, *see Walker v. Colvin*, No. 5:13-cv-01762 EJD, 2013 WL 5737701, at *2–3 (N.D. Cal. Oct. 21, 2013).[6]  The Court may not exceed the role which Congress defined for courts in these circumstances.

---

[6] Peter does not refute the reasoning of *Walker*, instead pointing to that decision's procedural posture and non-binding status.  *See* Objs. 25.  The Court is persuaded by the reasoning of *Walker* and Peter's objection is meritless.

### B.  Evidence for the AC's December 1, 2022 Partially Favorable Decision

The Court turns to Peter's objections regarding the R&R's conclusion that the AC's December 1, 2022 partially favorable decision was supported by substantial evidence.  *E.g.*, Objs. 2–8; R&R 7–13.  The AC incorporated by reference the ALJ's February 6, 2019 unfavorable decision's statement of the evidence and applicable law.  R. 3, 67–75.  The AC noted that Peter first became entitled to childhood disability benefits ("CDB") on his father's record in August 1975 and Peter's entitlement to disability insurance benefits ("DIB") began in January 2008.  *Id.* at 3–4.  On March 28, 2010, he was notified of an overpayment of $909, recovery of which was subsequently waived by the Commissioner.  *Id.* at 4.  A continuing disability review determination made on April 4, 2015, found that Peter completed a trial work period in May 2005, that his disability ceased due to substantial gainful work activity ("SGA") in January 2014, and that his entitlement to benefits terminated in April 2014.  *Id.*  This determination was revised, reconsidered, and then heard before an ALJ.  *Id.*  During this process, Peter refunded some payments—totaling $11,386.40 across two checks—one dated May 10, 2015, and another dated August 6, 2015.  *See id.* at 4, 221–22.  According to the ALJ, Peter's requested reconsideration of the overpayment of $11,386.40 led the Commissioner to discover another overpayment of $5,676.70, which was incurred between January 1, 2008, and September 30, 2008, due to Peter simultaneously receiving CDB on his father's record and DIB on his own record during that period.  *See id.* at 70–72.  In essence, two sources of overpayment are at issue—the period in 2008 of overlapping CDB and DIB, and the period in 2014 and 2015 where Peter continued to receive DIB despite achieving SGA.

The AC found that the ALJ, in reaching the February 6, 2019 unfavorable decision, relied upon payment worksheets that did "not take into consideration overpayment reduction amounts

credited to [Peter]'s record" and that the ALJ's underpayment calculation did "not take into account Medicare Part B premiums withheld as money paid to [Peter]." *Id.* at 4–5.[7]  The AC prepared a revised payment worksheet for the period of January 2008 through August 2015, based on Full Master Beneficiary Record ("FACT") and Payment History Update System ("PHUS") queries.  *See id.* at 5, 646–71, 674.  These sources showed that Peter "was overpaid $13,156.60 in benefits during that period." *Id.* at 5.  Considering the waived overpayment of $909 and Peter's refunds, Peter had an overpayment balance of $246.20. *Id.*  The Commissioner had withheld $3,160 of Margaret J.R.'s benefits to recover Peter's overpayment and, after crediting $246.20 of that sum to Peter's overpayment balance, the AC concluded that Peter was overpaid $13,156.60 from January 2008 through August 2015, his overpayment balance is now $0.00, and Margaret J.R.'s underpayment balance is now $2,913.80. *Id.*; *see also id.* at 671 (showing the AC's findings regarding payments made to Peter and his entitlements thereto on a month-to-month basis from 2008 to 2015).

Peter's objections regarding the substantiality of evidence supporting the AC's December 1, 2022 partially favorable decision fall into three categories: (1) whether he timely responded to the AC's invitation to submit his view of the facts and law in his case; (2) the computation of the overpayment amount; and (3) whether sentence-four remand is necessary to address whether Peter is entitled to an overpayment waiver.

---

[7] Peter raises objections related to this point about Medicare premiums, namely: (1) Medicare premiums were not paid directly to him; (2) he did not need Medicare; and (3) the Department of Health & Human Services ("DHHS") is responsible for Medicare Part B premiums and DHHS should have to repay SSA, not him.  Objs. 3–6.  These arguments are meritless as Congress specifically provides that in situations like Peter's, Medicare Part B premiums shall be paid by reducing a claimant's disability insurance benefits.  *See* 42 U.S.C. § 1395s(a)(1) ("In the case of an individual who is entitled to monthly benefits under section . . . 423 of this title, his monthly premiums under this part shall . . . be collected by deducting the amount thereof from the amount of such monthly benefits."); *id.* § 423 (entitled "Disability insurance benefit payments").

### 1. Timely Response

Peter was notified that the AC "would consider a statement about the facts and the law in the case and additional evidence if the additional evidence met [certain rules]" before finalizing its decision, but the AC stated that it "received no statement" from Peter. *Id.* at 3; *see also id.* at 672 (showing October 13, 2022 as the date for the letter informing Peter of this opportunity to be heard); *id.* at 674 ("You may send us a statement about the facts and the law in this within 30 days of the date of this letter."). The Commissioner's brief noted Peter's failure to submit a statement "about the facts and the law in the case." Resp. Br. 6. The R&R concluded that Peter had failed to take advantage of this opportunity to be heard. R&R 11.

Peter contests the R&R's conclusion that Peter did not take advantage of his chance to submit his view of the facts and case to the AC before it finalized its decision. Objs. 2 (quoting R&R 5 n.4); *see also id.* at 7–8. Peter describes the Commissioner's assertion as "a resounding lie," states that he attempted to meet the 10-day deadline with a response on December 12, 2022, argues that such "a 10-day window in which to respond [wa]s unreasonably unfair since [he] did not receive the Thursday, December 1, 2022-dated notice . . . until December 8, 2022," and highlights that "[t]he notice was not even post marked until Monday, December 5, 2022." Reply Br. 5. Peter misunderstands the communication that the R&R and Commissioner reference. *See* R&R 5 n.4. He refers to the December 1, 2022 notice which informed him of the AC's final decision, but the Commissioner and R&R refer to the October 13, 2022 notice which informed him of the AC's planned decision and his opportunity to be heard. *See* Dec. 1, 2022 Letter from SSA to Peter, Reply Br. Ex. C, ECF No. 46-3. His attached version of the notice of the AC's December 1, 2022 final decision includes an envelope which was postmarked on December 5,

2022, and the date "12-8-2022" written upon it.  *See id.*  That Peter purportedly responded[8] to the December 1, 2022 letter is irrelevant because the time for him to respond had passed and the AC had already made its final decision.  Peter has not shown that he sent in a statement of the law and facts of his case in response to the Commissioner's October 13, 2022 letter inviting him to submit such a statement.[9]  His objections on this point are overruled.

### 2.  Overpayment Amount

Peter's arguments about the amount of overpayment should have been directed to the AC before it finalized its December 1, 2022 partially favorable decision, not the Court.  He argues that the R&R erred in finding that the AC's December 1, 2022 partially favorable decision was supported by substantial evidence because: (1) Peter could not have incurred an overpayment for the period of January 2008 through August 2015 because he did not achieve SGA levels until October 15, 2013, and no overpayment should have been triggered, Objs. 2; (2) Peter's bank records indicate when his entitlement to CDB was terminated and that he did not receive CDB and DIB "simultaneously" because those payments were credited to his bank account on the 3rd and 10th of each month, respectively, *id.* at 3, 11; and (3) an overpayment of $11,386.40 "seems impossible" because Peter's "Form SSA-1099 Social Security Benefits Statement" only indicated $8,494.80 was paid, *id.* at 5 (quotation marks omitted).  These arguments about specific dates, amounts, and types of payment equate to challenges to the payment worksheets prepared by the AC.  *See* R. 646–71.  The Court cannot "reweigh evidence," "resolve conflicts in the record," "decide questions of credibility," or "substitute [its] own judgment."  *Young*, 362

---

[8] Peter claims he attached his response as an exhibit to his Motion for Summary Judgment.  *See* Objs. 2 (asserting that his response was available at "dkt. 41, exh. 5").  The attachments to his Motion for Summary Judgment consist only of cover pages.  *See, e.g.*, Document, Mot. Summ. J. Ex. E, ECF No. 41-6.  The Court does not consider these documents which have not been submitted for its review.

[9] The Court rejects Peter's argument that the AC erred by refusing his "December 10, 2022, counterclaims," premised upon the "Privilege and Immunity Clause."  Objs. 8–9.  Refusing this late submission was not error.

F.3d at 1001.  The payment worksheets provide substantial evidence for the Commissioner's final decision as to the amount of overpayment—the Court cannot make up for Peter's failure to bring these issues to the Commissioner's attention by adjudicating these arguments after the fact. The R&R did not err in concluding that it could not overstep its role in reviewing the Commissioner's final decision.  *See* R&R 10–12.

Peter's remaining claims of error on this score are unpersuasive.  First, he notes that the R&R misstated when he stopped working for Goodwill Industries and began working for The Chicago Lighthouse.  *See* Objs. 6 (objecting to the R&R's finding that Peter worked at Goodwill Industries "through December 2013" (quoting R&R 8)).  This misstatement is immaterial to any of the R&R's conclusions, but the Court clarifies that the evidence of record shows that Peter stopped working for Goodwill Industries in October 2013 and started working for The Chicago Lighthouse that same month.  *See* R. 110, 114.

Next, he challenges the R&R's statement that he did not cite any authority that FACT/PHUS queries are not used to calculate overpayments.  Objs 9.  He notes that he cited authority for this statement in his December 10, 2022 letter to the AC, and that his authority was "Disability Attorney Walter R. Hnot of YouTube notoriety."  *Id.* (quotation marks omitted).  The R&R's reference to authority contemplated sources like statutes, cases, or agency materials—not YouTube videos or other materials from advocates not appearing before the Court in this matter. His cited authority is non-binding, and his conclusion is unpersuasive when considering the SSA's Program Operations Manual System ("POMS") contrary guidance.  *See* Soc. Sec. Admin., POMS GN 02201.003(F), Documenting the Overpayment (2023), https://secure.ssa.gov/ poms.nsf/lnx/0202201003 (instructing SSA agents to consult certain records and systems in making overpayment determinations, including PHUS and the Master Beneficiary Record); *see*

14

*also Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371,

385–86 (2003) (noting that interpretative materials like POMS "warrant respect" (first citing

*Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944); and then citing *United States v. Mead

Corp.*, 533 U.S. 218, 228, 234–35 (2001))).

    Finally, Peter states that the R&R should have addressed a September 26, 2018 email

from an SSA official that found an underpayment of $1,688.50.  Objs. 15; *see also* Sept. 26,

2018 Communication from Dino Francioli to Valerie Renner, Mem. Supp. Partial Mot. Dismiss

Ex. C, ECF No. 20-1 at 12–17.  Further, he rhetorically asks why the payment worksheets that

the AC relied upon in its December 1, 2022 partially favorable decision were not previously

available to the ALJ, and he argues that this demonstrates that a credible agency, like the Internal

Revenue Service, needs to get involved.  Objs. 4, 6–7.  The purpose of remand under the first

clause of sentence six of section 405(g) is, upon a showing of "good cause," to allow the

Commissioner to take further action "before the Commissioner files the Commissioner's

answer," 42 U.S.C. § 405(g), and the Commissioner requested the sentence-six remand before

filing any answer, *see* Reply Mot. Remand 1.  In supporting the request for sentence-six remand,

the Commissioner stated that the ALJ relied on inaccurate evidence, there were significant

procedural irregularities in Peter's case, and Peter was potentially denied a fair opportunity to

review critical evidence.  *See* Mem. Supp. Mot. Remand 3–7, ECF No. 18.  The Court found that

this showing constituted good cause and granted the motion to remand under sentence six to

correct these issues.  *See* July 13, 2022 Order 5 ("[T]he Court finds that the Commissioner has

shown good cause for a sentence-six remand.").

    After remand, the AC identified the source of the ALJ's errors, namely that the prior

payment worksheets did not account for Peter's refunds and the Medicare Part B premiums.  R.

4–5.  The Commissioner then issued his final decision—the AC's December 1, 2022 partially favorable decision.  *See id.* at 1 ("This decision is the final decision of the Commissioner of Social Security after remand by the [C]ourt.").  Judicial review here is limited to final decisions of the Commissioner.  *See* 42 U.S.C. § 405(g) ("Any individual, after any *final* decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain review of such a decision by a civil action . . . ." (emphasis added)).  The prior findings of the ALJ are not binding on the AC.  *See, e.g.*, *Bauzo v. Bowen*, 803 F.2d 917, 922 (7th Cir. 1986) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496 (1951)).  Conflicting prior findings by the Commissioner's agents are "simply one factor to be considered in determining whether the substantial evidence standard has been satisfied."  *Id.*  Humans can make mistakes.  *See* Objs. 7 ("Humans, after all, can and do make egregious mistakes."); *Smith v. Berryhill*, 139 S. Ct. 1765, 1776 (2019) ("[T]he SSA is a massive enterprise, and mistakes will occur." (footnote omitted)).  Here, sentence-six remand corrected the mistakes with new payment worksheets.  R. 646–71.  The Court finds that the Commissioner's determination of the amount of overpayment is supported by substantial evidence.

### 3.  Overpayment Waiver

The remaining issue of substantial evidence concerns Peter's waiver request. Overpayment and whether the requirement that an overpayment be repaid should be waived are distinct issues.  *See* 20 C.F.R. §§ 404.902(j)–(k).  Waiver is appropriate if the overpayment recipient "is without fault [and] if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."  42 U.S.C. § 404(b)(1).  The claimant bears the burden of proof to show he is without fault.  *See, e.g.*, *Jackson v. Saul*, 808 F. App'x 383, 385 (7th Cir. 2020); *Casey v. Berryhill*, 853 F.3d 322, 329 (7th Cir. 2017).  Peter

submitted multiple waiver requests over the course of this matter—first on May 11, 2015, *see* R. 517–27, and again on April 23, 2018, immediately after his hearing before the ALJ, *see id.* at 556–66.  The ALJ's February 6, 2019 unfavorable decision found that Peter was liable for an overpayment.  *See id.* at 72.

When requesting the sentence-six remand, the Commissioner stated that after the AC reviewed the ALJ's overpayment determination and issued a ruling on the merits, the Court should permit the AC to remand to an ALJ for a further hearing "[i]f the [AC] finds it necessary or appropriate."  Mem. Supp. Mot. Remand 8 n.3.  Following the sentence-six remand, the Commissioner "agree[d] this case should be remanded for consideration of whether [Peter] is entitled to a waiver of his assessed overpayment" and now requests a sentence-four remand for that purpose.  *See* Resp. Br. 1, 19.  The Commissioner also requests, "for the sake of administrative and judicial economy, that the Court rule on the merits of [Peter]'s challenge to the [Commissioner]'s overpayment determination."  *Id.* at 19.

The R&R found that sentence-four remand was not warranted.  R&R 12–13.  It did not recommend reversal and remand because it found the AC's December 1, 2022 partially favorable decision to be supported by substantial evidence.  *Id.* at 12.  It concluded that the Commissioner was asking "for conflicting things" and noted that the Commissioner cited no authority to allow the Court to "both find its decision was supported by substantial evidence but nevertheless remand."  *Id.*  The R&R also noted that no party had argued that the Commissioner's ability to consider Peter's request for waiver of overpayment was dependent upon a remand.  *Id.* at 12–13.  Peter opposes sentence-four remand due to concerns that either *res judicata* or collateral estoppel would apply to his request for a waiver.  *See* Reply Br. 17; Objs. 10.[10]  In his objections, he

---

[10] The Court finds that such concerns are unfounded, given the subsequent developments in the record.  For example, Peter cites POMS GN 03101.160, Res Judicata (2018), but that guidance specifically notes that *res*

renews his argument that "recovery is against equity and good conscience," albeit by reference to issues affecting his mother, Margaret J.R.  *See* Objs. 10 (quotation marks omitted).  The Court finds that Peter's *pro se* arguments, construed liberally, request a determination that he should receive an overpayment waiver, and he opposes a sentence-four remand because it would allow the allegedly untrustworthy Commissioner to decide the waiver issue by upholding the ALJ's prior finding that he was liable for an overpayment.

"Fundamental principles of administrative law . . . teach that a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question."  *Smith*, 139 S. Ct. at 1779; *see also United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1103 (11th Cir. 1998) (describing how section 405 creates an "administrative scheme designed to give the administrative process the first opportunity to resolve disputes over eligibility or the amount of benefits awarded under the [Social Security] Act").  The Seventh Circuit has noted in the context of sentence-six remands "that the weighty interest of an agency in correcting its own mistakes will generally prevail in the absence of concerns of strategic behavior or gross inefficiency."  *Drs. Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672, 681 (7th Cir. 2010).  Here, the AC's December 1, 2022 partially favorable final decision addressed only the amount of overpayment and did not purport to address Peter's request for an overpayment waiver.  The AC did not notify Peter that it would only address the amount of overpayment and not the issue of an overpayment waiver.  *See* 20 C.F.R. § 404.976(a) ("The [AC] may limit the issues it considers if it notifies you and the other parties of the issues it will review.").  While the Commissioner's conclusion as to the amount of

---

*judicata* would not apply when the claimant supplies new evidence.  Reply Br. 17.  Here, the Commissioner's developments to the record via sentence-six remand raised new issues—which would preclude the application of *res judicata* to Peter's waiver claim—to the extent that the AC even decided the waiver issue.

overpayment is supported by substantial evidence, the Commissioner did not reach a conclusion on the overpayment-waiver issue.  The Court—considering the Commissioner's expertise and preferred route for administratively addressing this issue, *cf. Drs. Nursing & Rehab. Ctr.*, 613 F.3d at 681, and the lack of conclusion on the overpayment-waiver issue—finds that remand via sentence four is warranted to allow the Commissioner to address whether Peter is entitled to an overpayment waiver, *cf. Smith*, 139 S. Ct. at 1779–80.

### B.  Waiver of Counsel and Constitutional Claims

Peter argues that the R&R erred in concluding that: (1) the ALJ secured a valid waiver of his right to representation, Objs. 12–13; (2) he did not identify a redressable violation of his right to due process, *e.g.*, *id.* at 18–20; and (3) he failed to state an equal protection claim, *id.* at 16–18.  Like the R&R, the Court finds that Peter had ample opportunity to present material pertinent to the Commissioner's motion to dismiss and that there is sufficient documentary evidence to resolve Peter's claims.  *See* R&R 14.  Therefore, the Court construes the Commissioner's request to dismiss certain claims as a motion for summary judgment on those claims, where necessary.

#### 1.  Waiver of Counsel

"A claimant has a statutory right to counsel at a disability hearing."  *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (first citing 42 U.S.C. § 406; and then citing 20 C.F.R. § 404.1700).  "To ensure a valid waiver of counsel," the following information must be explained to a *pro se* claimant: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees."  *Id.*  The R&R concluded that the ALJ obtained a valid waiver of counsel from Peter.  *See* R&R 15–17. The SSA sent Peter a notice of hearing, dated January 25, 2018, informing him of his April 19,

2018 hearing before an ALJ.  R. 291–96.  Included with that notice was "SSA Publication No.

05-10075 (Your Right To Representation)."  *Id.* at 295, 297–98.  That SSA Publication explained

how a representative or attorney could assist him in dealings with the SSA, that some

organizations could give him free legal services, that contingency arrangements were possible,

that fees charged by a representative or attorney would need to be approved by either a court or

the SSA, and that the fees would be capped at "no more than 25 percent of past-due benefits or

$6,000, whichever is less."  *Id.* at 297–98.  Peter signed a form acknowledging that he received

the notice of hearing, which included SSA Publication No. 05-10075 (Your Right To

Representation).  *Id.* at 516.  That SSA Publication informed Peter of all the information

necessary for a valid waiver.  *See Binion*, 13 F.3d at 245; *see also* 42 U.S.C. § 406

("Representation of claimants before Commissioner").

At the April 19, 2018 hearing itself, the ALJ explained to Peter his right to have a

representative with him, which Peter acknowledged that he understood:

> ALJ: Since you are not represented, I want to explain that you do have the right to
> be represented by an attorney or a non-attorney.  A representative may help you
> obtain and submit records, explain medical terms, make requests, protect your
> rights and present the evidence in a light most favorable to your case.  A
> representative -- some legal service organizations offer free legal representation if
> you qualify under their rules.  That's usually need based.  And of course you are
> welcome to proceed today without a representative.  Do you understand your rights
> to representation?
> [Peter]: Yes, yes, uh-huh.
> ALJ: Okay.  And would you like to proceed without a representative?
> [Peter]: Yes, please.  Yes, uh-huh.

R. 78–79.  Peter argues that colloquy is immaterial because he did not qualify for free

representation, the value of his claim was "not worth [it for] a for-fee attorney to pursue," and

that the ALJ's failure to explicitly offer him the option of postponement and "the [SSA]'s lack of

cooperation" made him fearful that he would not receive a further hearing on the matter if he

postponed until he had a representative.  Objs. 12–13; *see also id.* at 23 (describing the cap on past-due benefits as a voidable "adhesion contract" due to the Commissioner's undue influence). He also describes the tasks that a representative or attorney could have helped him to accomplish and asserts that the R&R erred by not considering that a representative or attorney could have helped him to obtain a waiver determination worksheet, among other tasks.  *Id.* at 12–13.

The Court understands the challenges that *pro se* litigants face in representing themselves, recognizes that the statutorily—not contractually—imposed caps on fees, *see* 42 U.S.C §§ 406(a)–(b), can make securing representation more challenging, and notes that representation could have assisted Peter with his claims.  However, the plain import of the ALJ's statements is that if Peter did not want to proceed without a representative, then he could have postponed the hearing—the ALJ did not need to explicitly inform him that he could have postponed.  Peter attested that he received information about his right to representation and stated at the hearing itself that he wanted to proceed without a representative.  Requiring further disclosures and assurances that a *pro se* claimant understands his decision to waive his right to counsel would undermine the Commissioner's interest in efficiency and finality while providing little improvement to decisional accuracy.  *Cf. Mathews v. Eldridge*, 424 U.S. 319, 343–47 (1976) ("An additional factor to be considered here is the fairness and reliability of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards."). The Court finds that Peter's waiver of his right to representation was valid, and his *post hoc* objections are meritless.  The Commissioner is entitled to summary judgment on the waiver-of-counsel claim.

## 2. Due Process

Peter asserts that his right to due process under the Fifth Amendment was violated by the SSA posting a notice of the $5,676.70 overpayment to credit bureaus—such as Experian—in July 2017 without first granting him a hearing on the issue. Pl.'s Mem. L. Supp. Mot. Summ. J. 19–21. Peter also alleges a due process violation based on the determination of the $5,676.70 overpayment itself. *Id.* at 22–23. The R&R concluded that: (1) Peter had not identified a protectible interest regarding the reporting of an overpayment; (2) the delay in the hearing which Peter received was not "arbitrary or the result of some inexcusable circumstance"; (3) Peter received sufficient notice regarding the overpayment; and (4) allegations regarding other alleged procedural defects in the determination of the $5,676.70 overpayment must be channeled through the judicial review process of 42 U.S.C. § 405(g). R&R 21–23. Peter objects, describing the harms he incurred because of the overpayment's posting and reiterating that the notice of the $5,676.70 overpayment was insufficient. Objs. 18–21.

For the harms allegedly stemming from the overpayment posting to be redressable as a due process violation, Peter must point to "a liberty or property interest that warrants due process protection." *Arthur-Price v. Blinken*, No. 21 C 3475, 2022 WL 1004415, at *4 (N.D. Ill. Apr. 4, 2022) (citing *Mathews*, 424 U.S. at 332). For example, "the interest of an individual in continued receipt of [Social Security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Mathews*, 424 U.S. at 332. Here, Peter has not identified a protectible interest regarding overpayment postings to credit-reporting bureaus. When the overpayment notice was posted to credit bureaus in July 2017, Peter was no longer receiving benefits from the SSA, R. 4–5, distinguishing this case from the cases Peter cited which found a due process violation related to "determining continuing eligibility for unemployment

compensation," Objs. 19–20 (quoting *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 672 (1993) (O'Connor, J., dissenting)).  Peter's recitation of his damages is nonresponsive to his failure to identify a protectible interest, *see* Objs. 18–21, and the R&R did not err in concluding that Peter failed to identify such an interest.

Similarly, the R&R did not err in concluding that the delay of his hearing before an ALJ was not arbitrary, the result of some inexcusable circumstance, or otherwise actionable.  R&R 22.  Here, the overpayment notice posted by Experian was posted in July 2017, removed by at least September 2, 2017, and Peter's hearing was held in April 2018.  R. 78, 502, 506–07.  In other words, the delay was less than a year, and the Seventh Circuit has determined that "delays of up to one year would not violate due process."  *McDonald v. Astrue*, 465 F. App'x 554, 556 (7th Cir. 2012) (first citing *Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991); and then citing *Littlefield v. Heckler*, 824 F.2d 242, 247 (3d Cir. 1987)).  Such a delay may be frustrating, but it is not actionable.  *See Heckler v. Day*, 467 U.S. 104, 111–18 (1984) (explaining why federal courts may not impose mandatory deadlines upon the SSA for processing claims); *Wright v. Califano*, 587 F.2d 345, 353–54 (7th Cir. 1978) ("Since administrative efficiency is not a subject particularly suited to judicial evaluation, the courts should be reluctant to intervene in the administrative adjudication process, absent clear congressional guidelines or a threat to a constitutional interest.").

Nor did the R&R err in concluding that it could not reach Peter's arguments concerning potential due process violations related to the overpayment determination because the sentence-six remand cured the relevant procedural deficiencies.  R&R 22–23.  Congress has stripped federal courts of general federal-question jurisdiction for "decision[s] of the Commissioner of Social Security," channeling arguments about those decisions to the judicial review process

articulated in section 405(g).  42 U.S.C. § 405(h).  The sentence-six remand via section 405(g) cured the deficiencies related to Peter's inability to view certain documents relied upon by the ALJ, *see* Pl.'s Mem. L. Supp. Mot. Summ. J. 6, 12–14, 21–24, because it replaced the ALJ's February 6, 2019 unfavorable decision and Peter has not identified other records that the AC relied upon in reaching its December 1, 2022 partially favorable decision which he did not receive.  Peter states that "[n]otice must be sufficient to enable the recipient to determine what is being proposed and what he or she must do to prevent the deprivation of his or her interest." Objs. 21.  Here, he received sufficient notice, as he was informed of the $5,676.70 overpayment determination, his right to request reconsideration of that decision, and his right to a hearing before an ALJ on that issue—rights of which Peter availed himself.  *See* May 6, 2016 Letter from Peter to SSA, Compl. Ex. 15, ECF No. 1-4 at 34–37 (stating that he received "a Social Security Administration Overpayment notice" which informed him that he was "being assessed an additional $5,676.70 Overpayment"); R. 239–41 (describing the SSA's May 24, 2016 reconsideration of the $5,676.70 overpayment and informing Peter of his right to request a hearing).

After the sentence-six remand to cure the SSA's conceded failure to give Peter an opportunity to review certain evidence, he was informed of the AC's new proposed decision regarding the overpayment amounts and given a chance to be heard.  R. 672–75.  The Constitution does not require more under these circumstances.  *Cf. Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 799–804 (6th Cir. 2018) (requiring individualized opportunities to be heard regarding medical reports which were generated via a widespread fraudulent scheme rather than a blanket determination that such reports were fraudulent).  Again, the Court cannot make up for

Peter's failure to avail himself of that opportunity to be heard.  The Commissioner is entitled to summary judgment on the due process claim.

### 3.  Equal Protection

Peter argues that he was mistreated due to his status as an American Indian and asserts that his Caucasian colleagues were treated better than he was treated.  *See, e.g.*, Mem. L. Supp. Mot. Summ. J. 21–24 ("Because [Peter] is looked upon as a disfavored . . . American Indian, this $5,676.70 sanction on all Social Security Disability claimants has not been applied uniformly.").  The R&R concluded that Peter failed "to state a Fifth Amendment equal protection claim."  R&R 20–21.  The R&R stated that Peter did "not identify *any* provision of the Social Security Act in support of his would-be Fifth Amendment equal protection claim."  *Id.* (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 653 (1975)).  The R&R noted that Peter's protest that "he was not granted reasonable notice to a supplementary hearing" was based on agency guidance materials, specifically POMS and the Hearings, Appeals, and Litigation Law Manual ("HALLEX").  *Id.* at 21.  In a footnote, the R&R noted that "no circuit has held that the HALLEX creates *constitutional* rights because, of course, only the Constitution, not an agency's rules [or] procedures, is the source of such rights."  *Id.* at 21 n.10 (quoting *Davenport v. Astrue*, 417 F. App'x 544, 547–48 (7th Cir. 2011)).  Peter asserts that these points "do[] not make any logical sense."  Objs. 16–17.

These points are sensical—POMS and HALLEX do not create rights enforceable under the Constitution's Equal Protection Clauses.  The Constitution creates a right to equal protection, which "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  That right may be violated by, for example, "irrational" *statutory* distinctions based on protected characteristics.  *See, e.g.*,

*Wiesenfeld*, 420 U.S. at 651.  Peter does not point to any aspect of the Social Security Act which makes such an irrational distinction, instead premising his argument on agency materials like POMS and HALLEX.  But the Seventh Circuit has rejected the idea that SSA materials which are not the product of formal rulemaking are binding sources of legal authority, sufficient to support an equal protection claim.  *See Gebauer v. Saul*, 801 F. App'x 404, 408 n.1 (7th Cir. 2020) (observing that HALLEX provisions "are not binding law independent of the governing statutes and regulations"); *Wash. State Dep't of Soc. & Health Servs.*, 537 U.S. at 385 (stating that POMS provisions "are not products of formal rulemaking").  Interpretive materials from agencies are useful sources of information, but they do not give rise to rights enforceable under the Fifth Amendment's Equal Protection Clause, unlike the statutory provisions of the Social Security Act which create entitlements to continued receipt of benefits.  *See Wiesenfeld*, 420 U.S. at 637–38 (finding an equal protection violation based on a prior version of 42 U.S.C. § 402(g)).  The R&R did not err in concluding that Peter failed to adequately support a basis for his equal protection claim.

The R&R also found that Peter failed to "plausibly allege discriminatory intent."  R&R 21; *see also Chi. Firefighters Loc. 2 v. City of Chicago*, 249 F.3d 649, 653 (7th Cir. 2001) ("[O]nly *deliberate* discrimination is actionable under the equal protection clause.").  Peter objects, stating that if the Commissioner were not prejudiced against him, the Commissioner would have issued a decision in his favor, and he attempts to make a showing under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).  Objs. 16–18.  His argument that discriminatory intent may be shown by an unfavorable decision is meritless and would allow for any dissatisfied claimant with protected characteristics to make out an equal protection claim, without regard to whether any decisionmakers harbored

discriminatory animus against the claimant.  His *Arlington Heights* showing is insufficient as he fails to muster any proof beyond conclusory assertions "that a discriminatory purpose [was] a motivating factor in the decision."  429 U.S. at 265–66.  Peter fails to state a Fifth Amendment equal protection claim, and the Commissioner is entitled to summary judgment on this claim.

### C.  Statutory Claims

#### 1.  FCRA

The R&R concluded that Peter's claim under the FCRA was barred by the applicable statute of limitations.  R&R 13; *see also id.* at 13 n.7 (citing 15 U.S.C. § 1681p (setting the relevant deadline as the earlier of "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs")).  Peter argues that the facts underpinning his claim "still [bear] relevance," but concedes that his claim is untimely.  Reply Br. 10.  This concession dooms his FCRA claim, such that the R&R did not err in finding that Peter failed to state a claim for relief under the FCRA.  The Commissioner is entitled to summary judgment on this claim.

#### 2.  FOIA and Privacy Act

The R&R found that—under either FOIA or the Privacy Act—Peter's claim was moot and found that Peter failed to make a cogent argument about his entitlement to monetary damages.  R&R 17–20.  Peter's objections to these conclusions are meritless.  Objs 14–16.  He argues that he "never received a 'denial' letter" regarding his FOIA request but does not create a genuine dispute of material fact with respect to the R&R's recitation of the steps that the SSA undertook to deliver to him the materials that he requested.  *Id.* at 15; R&R 18–19.  He argues in perfunctory fashion that his case falls under the "voluntary cessation" exception to mootness.  Objs. 15 (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)).  However, Peter is not

27

objecting to the SSA's general practice in handling FOIA requests, but instead how it responded to his requests for documents in this case.  The SSA has since given Peter the documents he requested, such that his claim is now moot, and the Commissioner is entitled to summary judgment on his FOIA/Privacy Act claims.  Peter's other objections do not change this bottom-line conclusion.[11]

### D.  Third-Party Claims and Ancillary Issues

Throughout this case, Peter has complained about the actions of an SSA agent, either "Chantelle" or "Shantelle," who "coerced then 85-year-old widow Margaret J.[R.] to agree to have $158.00-per-month deducted from her monthly" benefits without informing her of certain rights.  *See, e.g.*, Pl.'s Mem. L. Supp. Mot. Summ. J. 24–27 (asserting violations on behalf of Margaret J.R.).  The R&R concluded that Peter lacked standing to assert injuries to his mother and that because he was proceeding *pro se*, he could not represent his mother's interests.  R&R 23–25.  Peter's objections are nonresponsive—he points to the Federal Rules of Civil Procedure provisions for joinder, generalized caselaw on third-party standing, and again laments that the Social Security Act's limitations on the recovery of past-due benefits is the cause of his *pro se* status.  Objs. 21–24.  Even if Peter had standing to assert his mother's rights, his *pro se* status precludes him from asserting those rights.  *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Nocula v.*

---

[11] For example, he objects that he did not muster a cogent argument regarding the availability of money damages under the Privacy Act by pointing to *Federal Deposit Insurance Corp. v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004).  Objs. 16.  That case concerned claims of fraud and negligence under Illinois law, not the Privacy Act.  *See Fed. Deposit Ins. Corp.*, 374 F.3d at 580 ("Illinois law, which the FDIC agrees controls . . . .").  Relatedly, his objection that he would have asked for more specific documents if he knew of their relevance at the time is perfunctory and unpersuasive.  *See* Objs. 16.

*UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008) ("[O]ne pro se litigant cannot represent another

. . . ."). Peter's claims on his mother's behalf are dismissed without prejudice.[12]

Finally, the R&R concluded that Peter's requests for costs and fees were premature as he

had yet to achieve prevailing-party status. R&R 25–27. Peter's objections are nonresponsive—

for example, he argues that Federal Rule of Civil Procedure Rule 54 provides for the award of

costs to the prevailing party. Objs. 24–25. That rule states that costs "should be allowed to the

prevailing party," but also limits that proposition where "a federal statute, these rules, or a court

order provides otherwise." Fed. R. Civ. P. 54(d)(1). Here, that federal statute is the Equal

Access to Justice Act ("EAJA"), which requires the prevailing party to "submit to the court an

application for fees and other expenses which shows that the party is a prevailing party and is

eligible to receive an award" within thirty days of entry of final judgment. 28 U.S.C.

§ 2412(d)(1)(B). Setting aside whether Peter is a prevailing party, he has not submitted such an

application and the Court cannot award him costs at this point. As to attorney's fees, his *pro se*

status precludes recovery of those fees. *See Krecioch v. United States*, 316 F.3d 684, 688 (7th

Cir. 2003) ("[A]ttorney's fees are not available for *pro se* litigants under the EAJA."). His

requests for costs and fees are denied without prejudice.

## CONCLUSION

Accordingly, Peter's Objections to Magistrate's R&R, ECF No. 48, are SUSTAINED IN

PART and OVERRULED IN PART; Magistrate Judge Jonathan E. Hawley's Report and

Recommendation, ECF No. 47, is ADOPTED IN PART and REJECTED IN PART; Peter's

---

[12] Peter objects to the idea that the Commissioner was allowed to withhold Margaret J.R.'s benefits to recover his overpayment, noting they each had separate Master Beneficiary Records. Objs. 4–5. The Commissioner may recover overpayments by decreasing payments "to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person." 42 U.S.C. § 404(a)(1)(A). As both Peter and Margaret J.R. received benefits through Peter's father, *see, e.g.*, R. 667, the Commissioner could recover the overpayment from Margaret J.R. caused by Peter's period of overlapping CDB and DIB benefits.

Motion for Summary Judgment, ECF No. 41, is DENIED; the Commissioner's requests for summary judgment on Peter's claims regarding waiver of counsel, due process, equal protection, the Fair Credit Reporting Act, the Freedom of Information Act, and the Privacy Act, ECF No. 45, are GRANTED; Peter's third-party claim on behalf of Margaret J.R. is DISMISSED WITHOUT PREJUDICE; Peter's requests for costs and fees are DENIED WITHOUT PREJUDICE; and the AC's December 1, 2022 partially favorable decision is AFFIRMED IN PART, REVERSED IN PART, and REMANDED via sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment and close the case.

Entered this 31st day of May, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE